## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN PAUL CHARLTON            )
13526 Camino De Plata Ct.    )
Corpus Christi, TX 78418     )
                             )
            *Plaintiff,*     )
                             )
v.                           )            Civil Action No.
                             )
MICHAEL W. WYNNE             )
Secretary of the Air Force   )
1670 Air Force Pentagon      )
Washington, DC 20330         )
                             )
            *Defendant.*     )
_____)

## COMPLAINT

**(APA Review of Decision of the Air Force Board for Correction of Military Records)**

### JURISDICTION AND VENUE

1. This action seeks review of the decision of the Air Force Board for Correction of Military Records (AFBCMR) dated October 17, 2005. That decision is a final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff raises claims under the United States Constitution, federal statutes, and military regulations.

3. The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. § 1552, which provides for a service member to apply to the AFBCMR to correct errors and injustices, and the APA, 5 U.S.C. § 701 *et seq.*, which permits a federal court to review and reverse the decision of a Board for Correction of Military Records that is arbitrary, capricious, unsupported by evidence or otherwise contrary to law.

4. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5. Venue lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1402(a)(2).

6. By filing this complaint in this Court, Plaintiff expressly waives any right or entitlement to recover monetary damages greater than $10,000 in this action.

## PARTIES

7. Plaintiff, John Paul Charlton, is a United States citizen and former U.S. Air Force Academy ("Academy") Cadet who resides at the address stated in the caption.

8. Defendant, the Honorable Michael W. Wynne, is the Secretary of the Air Force and is the named defendant in his official capacity only as the head of the Department of the Air Force. 10 U.S.C. § 8013. Because he is the officer with final authority for correction of records within the Department of the Air Force, he is the proper defendant for a cause of action under the APA.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff was honorably discharged from the Air Force on January 12, 2004.

10. On August 10, 2004, Plaintiff submitted an application to the AFBCMR for the correction of records relating to errors and injustices resulting from the Air Force's decision to disenroll him from the Academy, failure to grant him a medical discharge, and insistence that he is subject to recoupment for the cost of his Academy education.

11. On October 17, 2005, the AFBCMR issued a final decision denying Plaintiff's application.

12. Plaintiff has exhausted all administrative remedies available to him.

13. Pursuant to 28 U.S.C. § 2401(a), this type of claim must be filed within six years after

2

such claim first accrues.

14. Plaintiff's claim first accrued on January 12, 2004, when he separated from the Air Force.

15. As this Complaint is filed within six years of the date of Plaintiff's discharge and final separation from the Air Force, it is timely filed. 50 App. U.S.C. § 526(a); *Bickford v. United States*, 656 F.2d 636, 639 (Ct. Cl. 1981).

## FACTS

16. On September 13, 2005, the AFBCMR considered Plaintiff's application to correct his military records, and on October 17, 2005, the AFBCMR issued a final decision denying Plaintiff's application. This action arises because the AFBCMR, acting for the defendant, has failed to correct errors and remove injustices that followed from the failure by the Department of the Air Force to comply with applicable statutes and regulations in its dealings with Plaintiff.

### Plaintiff's Enrollment at the Academy and Health Problems

17. Plaintiff entered the Academy in the summer of 1999.

18. Plaintiff began to experience medical problems due to rheumatoid arthritis while on duty at Tyndall Air Force Base in the summer of 2001, and sought medical evaluation and treatment there on July 20, 2001.

19. While at Tyndall Air Force Base, Plaintiff underwent testing, evaluation, and initial treatment for his serious inflammatory polyarthritis condition.

20. As demonstrated by his evaluation and treatment at Tyndall Air Force Base and by the opinion of his treating rheumatologist Lieutenant Colonel Kimberly P. May, M.D., then Chief Medical Officer for the Air Force Academy Hospital and its primary internist and rheumatologist,

3

the onset of Plaintiff's medical condition of rheumatoid arthritis was no later than July 2001, and thus prior to the beginning of his third year at the Academy which officially commenced on the first day of fall term classes.

21. After returning to the Academy from Tyndall Air Force Base, Plaintiff continued to suffer ongoing synovitis with significant active inflammation and significant fatigue, despite treatment and medication.

22. After additional testing and evaluation at the Academy from August through mid-November 2001, Plaintiff's diagnosis was refined as symmetric small and large joint inflammatory polyarthritis, with a differential diagnosis that included seronegative rheumatoid arthritis.

23. On November 15, 2001, Plaintiff's medication regime was changed to include Methotrexate, a chemotherapeutic prescription medication also used to treat autoimmune diseases including rheumatoid arthritis.

24. On December 14, 2001, an Academy Cadet Medical Evaluation Board (MEB) was convened to evaluate Plaintiff's medical condition and found that Plaintiff was not medically qualified for military service including for worldwide duty, for commissioning, for flying, or even for a medical waiver.

25. Rheumatoid arthritis is a medically disqualifying condition for an Academy Cadet or other member of the Air Force pursuant to Air Force Instruction (AFI) 48-123.

26. The official report of the MEB, convened December 14, 2001, directed that a repeat MEB be held during May 2002 to re-evaluate Plaintiff's medical condition and status.

27. In 2002, Plaintiff's rheumatoid arthritis required ongoing medication; he continued to miss classes and struggle with fatigue as he suffered ongoing symptoms as well as other illnesses

4

related to his autoimmune condition and to side effects from his medication.

28. Plaintiff's struggles with his condition, including the effects of medication, fatigue, and missed classes contributed directly to his being charged with honor code violations, in part due to his computer science instructor's resulting bias against, and inequitable treatment of, him for having missed classes.

29. Despite Air Force directives and regulations, the follow-up MEB planned for May 2002, as recommended by Plaintiff's Air Force rheumatologist and pursuant to the directive in the December 14, 2001 MEB official report, never occurred; no subsequent MEB was ever conducted and thus the findings of the December 14, 2001 MEB, that Plaintiff was not medically qualified for military service including for worldwide duty, for commissioning, for flying, or even for a medical waiver, were never overturned.

30. Plaintiff was deemed medically disqualified at the December 14, 2001 MEB, but was temporarily allowed to continue until a later MEB was to be held to determine whether a waiver for commissioning would be granted.

31. Under Academy practice and precedent, a cadet diagnosed with a medically disqualifying chronic illness, such as Plaintiff's rheumatoid arthritis, is allowed to leave the Academy at the two year mark and to not be held liable for the cost of an Academy education; if retained for the remaining two years, such cadet would receive a diploma without being commissioned and without being held liable for recoupment, unless an official MEB near the time of graduation were to issue a waiver to allow commissioning.

## Honor Board

32. During Fall semester 2002 while Plaintiff was in his final year at the Academy, he was

5

referred to a Wing Honor Board as a result of allegations by his Computer Science instructor Major

Terry Wilson relating to Plaintiff's conduct in his Computer Science (Comp Sci) 467 class.

33. On March 5, 2003, the Honor Board convened to hear evidence and make findings on

the following allegations against Plaintiff: (a) cheating by copying portions of another cadet's

computer code for the Comp Sci 467 Programming Exercise (PEX) 1 assignment and presenting it

as his own work without properly documenting the cadet's work product; (b) cheating by copying

portions of the homework solution from the previous semester for Comp Sci 467 Homework 6

assignment and presenting it as his own work without proper documentation; and (c) lying by stating

in his documentation statement for the Comp Sci 467 PEX 2 assignment that he received no

assistance when he in fact had received assistance from another cadet.

34. The Honor Board found that Plaintiff violated the Academy Cadet Wing Honor Code

by committing the actions alleged in items (a) and (b) of the preceding paragraph, but found that

Plaintiff did not commit the action alleged in item (c) of the preceding paragraph.

35. Prior to the Honor Board hearing, Plaintiff sought but was unable to obtain requisite

legal assistance from the office of the Area Defense Counsel (ADC) at the Academy; he was

informed that the ADC office was extremely busy at that time with other matters at the Academy,

specifically sexual misconduct cases.

36. Plaintiff was not provided the fair process that he was due with regard to the Honor

Board.

37. Plaintiff's request that the three honor code allegations, none of which involved the same

incident, be addressed in separate hearings, but his request was improperly denied.

38. Plaintiff was not properly or timely notified of the evidence against him prior to the

6

convening of the Honor Board.

39. Plaintiff was improperly denied adequate notice and opportunity to interview the Honor Board's surprise expert witness.

40. Plaintiff was not informed that he could call his own independent expert witness at the Honor Board.

41. Plaintiff was unable to adequately investigate, review, prepare, or refute the technically complex, modified and embellished evidence against him and could not adequately cross examine witnesses, because he lacked legal expertise, the assistance of counsel, or a computer expert.

42. Because Plaintiff was not provided adequate time or resources to prepare, a key defense witness Cadet Lupini did not appear at the Honor Board; it was not until later, after Cadet Lupini observed the Honor Board proceedings that he and Plaintiff realized that Cadet Lupini had witnessed Plaintiff staying up nearly all night working on and testing one of the subject assignments.

43. The initiator and only witness against Plaintiff, Major Wilson, was not physically present at the Honor Board.

44. Witness testimony during the Honor Board, especially cross examination, was unduly confusing for Plaintiff and for members of the board because all questions were required to be asked through the Honor Board chairman, thereby limiting answers pursuant to the chairman's interpretation of the question.

45. The Honor Board should have been provided additional expertise and time before making its decision; the decision in Plaintiff's case was made by cadets who were unduly confused by the complex technical issues and exhausted because the Honor Board proceedings were conducted over the course of sixteen hours in a single day.

7

46. The members of the Honor Board should have received an instruction on the affirmative defense of mistake of fact–that honest mistakes can explain behavior in certain circumstances. Had the Honor Board been properly instructed, it could well have found that Plaintiff was reasonably and honestly mistaken as to when or how to document resources and assistance on the PEX 1 assignment, given that Plaintiff missed classes where the PEX 1 assignment was addressed and so depended upon his classmate Cadet Lammert to brief him on what was missed including what resources could be used.

47. The evidence presented to the Honor Board was insufficient to prove violation of the Honor Code by proof beyond a reasonable doubt.

48. Memos from Plaintiff's Computer Science instructor Major Wilson contained repetitious and inflammatory language which should have been redacted by the Honor Department, but instead the unredacted memos were improperly read by members of the Honor Board before they heard any testimony.

49. Evidence from Major Wilson that included exaggerated and misquoted conversations was improperly considered by the Honor Board.

50. Major Wilson tampered with and modified Plaintiff's homework before it was presented as evidence to the Honor Board; the Honor Board improperly considered such evidence.

51. Major Wilson used a software program and developed exaggerated, misleading and incomplete data showing inaccurate comparisons between Plaintiff's homework assignments and those of his classmates; the Honor Board improperly considered such evidence.

52. Major Wilson misled the Honor Board by omitting Plaintiff's documentation references contained in the margins of Plaintiff's original computer code sheets; the Honor Board improperly

8

considered such evidence.

53. Major Wilson, after finally being reached by phone, was improperly allowed to testify before the Honor Board out of order, after Plaintiff's first key witness.

54. Because Plaintiff lacked the assistance of an independent computer expert of equal stature to that of his course instructor Major Wilson, Plaintiff was prevented from being able to adequately counter Major Wilson's opinions and assertions before the Honor Board.

55. The Honor Board improperly failed to discount Major Wilson's testimony based on his clear bias, and because his testimony was contradicted by other witnesses including the board's own expert.

56. The Honor Board improperly ruled against Plaintiff despite the fact that no evidence was presented that Plaintiff had ever seen or obtained a copy of the solution for the Comp Sci 467 Homework 6 assignment, and despite the fact that the board's own expert testified that the solution could be developed from internet resources.

57. The Honor Board improperly ignored the extensive evidence that Plaintiff and his classmate Cadet Lammert each developed a solution to the Homework 6 assignment by using internet resources, which were allowed by the assignment; moreover, although Plaintiff was only one of several cadets in the class who were computer science majors and who developed a solution to the Homework 6 assignment by using the internet resources, only Plaintiff was singled out by Major Wilson as having violated the Honor Code.

58. Had an independent thorough review of Plaintiff's case been properly conducted, such review would have demonstrated that he neither intended to, nor acted in such a way as to, violate the Honor Code.

9

## Disenrollment and Discharge

59. Except for the Honor Board proceedings described herein, Plaintiff passed all of his courses and met all academic, military, and other requirements for his diploma during his four years of enrollment at the Academy, but he was never granted his diploma.

60. Following the decision of the Honor Board, Plaintiff's case was reviewed by the Academy Advisory Board and subsequently the Superintendent of the Academy.

61. Plaintiff received inequitable treatment while the Honor Board's decision was under review by the Academy.

62. Plaintiff was not given the benefit of a full independent evaluation while the Honor Board decision was under review.

63. The review of Plaintiff's Honor Board decision was inadequate because it occurred during a time period when key members of the top leadership at the Academy were being replaced and while they were consumed with the 2003 sexual assault scandals.

64. The review of Plaintiff's Honor Board case was not a full independent evaluation and was improper because the Academy Advisory Board was chaired by the Acting Superintendent who had already examined Plaintiff's case as the new Commandant.

65. During the review of Plaintiff's Honor Board case, substantial new evidence was unjustly disregarded by the Academy Advisory Board, including: that Major Wilson changed Plaintiff's homework significantly before presenting it as evidence to the Honor Board; that Plaintiff's roommate witnessed Plaintiff working and testing the PEX 1 assignment alone, but only realized that assignment was the one in question when details at the Honor Board hearing were presented, and thus he did not testify; that certain members of the Honor Board acted improperly by falling asleep,

10

laughing, dismissing complicated concepts, and demonstrating an obvious bias against Plaintiff.

66. During the review of Plaintiff's Honor Board case, additional testimony from the computer science instructor was received but Plaintiff was not allowed to be heard or provide rebuttal.

67. Plaintiff's commander's formal AOC recommendation for retention with probation was unjustly disregarded.

68. Plaintiff's alleged academic honor violations improperly received the harshest sanction possible, not because such sanction was warranted, but due to pressure for tougher disciplinary standards in light of the 2003 sexual assault scandals; such severe sanction for an academic violation was by all accounts unprecedented in the history of the Academy.

69. On August 5, 2003, the Superintendent of the Academy reviewed the findings of the Honor Board along with additional matters raised on appeal, and directed that Plaintiff be disenrolled from the Academy and be required to reimburse the government for the cost of his Academy education in the amount of approximately $136,478 plus accruing interest.

70. On January 5, 2004, the Secretary of the Air Force directed that Plaintiff be discharged with an Honorable Discharge, and ordered that Plaintiff be required to reimburse the government for the cost of his education without explanation as to why Plaintiff was denied the option of repaying his debt through military service; upon information and belief, Plaintiff's case was treated differently than every other similar academic honor case at the Academy by his being denied the option of debt repayment through military service.

71. The Academy and the Air Force unjustly failed to take into consideration the impact of Plaintiff's medical condition in evaluating his honor case or during his disenrollment evaluation, so

11

that the medical and disability aspects of his situation were disregarded and only the disciplinary aspects of his situation were considered in the decision to disenroll and discharge him; despite evidence of his medical condition being submitted by Plaintiff at every stage of proceedings subsequent to the Honor Board, the issue of his medical condition was never addressed by the Academy or the Air Force, though it could well have been the reason that he was not offered the option of repaying his debt through military service.

72. Plaintiff was discharged from the Air Force effective January 12, 2004.

## Application to the Air Force Board for Correction of Military Records

73. On August 10, 2004, Plaintiff submitted an application to the AFBCMR for the correction of his military records, requesting: that the two findings in 2003 that he violated the Academy Cadet Honor Code be eliminated from his record; that he be granted a diploma from the Academy; that he be granted a medical discharge for the rheumatoid arthritis that began during his second year at the Academy, or in the alternative, that he be offered a commission and allowed to fulfill his military service; and that the debt he incurred for the cost of his education at the Academy be eliminated.

74. In his application, Plaintiff identified various prejudicial substantive and procedural errors made by the Air Force that comprised the basis for his application for correction of records.

75. The first set of prejudicial substantive and procedure errors made by the Air Force that Plaintiff identified in his application as a basis for correction of his records related to the failure by the Air Force to properly evaluate his rheumatoid arthritis with respect to his fitness for military service and to issue him a medical discharge.

76. The second set of prejudicial substantive and procedure errors made by the Air Force that

12

Plaintiff identified in his application as a basis for correction of his records related to the fact that he had not received sufficient due process at his Honor Board. Such errors included the denial of Plaintiff's request that the three allegations, none of which involved the same incident and each of which involved highly complex and technical issues, be addressed in separate hearings; that he did not receive adequate notice of the evidence against him; that he was denied adequate notice and opportunity to interview the Honor Board's expert witness; that he was not informed that he could call his own independent expert witness; that he could not adequately investigate, review, prepare, or refute the technically complex evidence against him and could not adequately cross examine witnesses, because he lacked legal expertise, the assistance of counsel, or a computer expert; that a key defense witness Cadet Lupini did not appear at the Honor Board; that the initiator and only witness against Plaintiff, Major Wilson, was not present at the Honor Board; that witness testimony, especially cross examination, was confusing because all questions were required to be asked through the Honor Board chairman; and that the decision in his case was made by a board of cadets that did not contain a single computer science major and who, as evidenced by various cadets' subsequent statements in the record, were confused by the complex technical issues and exhausted because the Honor Board proceedings were conducted over the course of sixteen hours in a single day.

77. The third set of prejudicial substantive and procedure errors made by the Air Force that Plaintiff identified in his application as a basis for correction of his records related to the fact that the members of the Honor Board should have received a mistake of fact instruction.

78. The fourth set of prejudicial substantive and procedure errors made by the Air Force that Plaintiff identified in his application as a basis for correction of his records related to the fact that the evidence presented to the Honor Board was insufficient to prove violation of the Honor Code by

13

proof beyond a reasonable doubt. Such errors included the fact that memos from Plaintiff's Computer Science instructor Major Wilson, which contained repetitious and inflammatory suggestions, were read by members of the Honor Board before they heard any testimony; that evidence from Major Wilson included exaggerated and misquoted conversations; that Major Wilson substantively altered Plaintiff's homework before it was presented as evidence to the Honor Board; that Major Wilson used a software program and developed exaggerated, misleading and incomplete data showing inaccurate comparisons of homework assignments to the Honor Board; that Major Wilson misled the Honor Board by omitting Plaintiff's documentation references contained in the margins of Plaintiff's original computer code sheets; that Major Wilson was allowed to testify after Plaintiff's first key witness; that the lack of an independent expert to assist Plaintiff prevented him from being able to counter Major Wilson's opinions and assertions; that Major Wilson's testimony should have been discounted in part due to his obvious bias and altered evidence, and because it was contradicted by other witnesses; that no evidence was presented that Plaintiff had ever seen or obtained a copy of the solution for the Comp Sci 467 Homework 6 assignment; that the Honor Board ignored extensive evidence that Plaintiff and his classmate Cadet Lammert each developed a solution to the Homework 6 assignment by using internet resources; and that an independent thorough review of Plaintiff's case would have demonstrated that he neither intended to, nor acted in such a way as to, violate the Honor Code.

79. The fifth set of prejudicial substantive and procedure errors made by the Air Force that Plaintiff identified in his application as a basis for correction of his records related to the fact that Plaintiff received inequitable treatment while the Honor Board's decision was under review by the Academy. Such errors included the fact that Plaintiff was not given the benefit of a full independent

14

evaluation; that the review of his case was inadequate because it occurred during a time period when key members of the top leadership at the Academy were being replaced and while they were consumed with the 2003 sexual assault scandals; that the review of Plaintiff's case by the Academy Advisory Board was not a full independent evaluation because the Academy Advisory Board was chaired by the Acting Superintendent who had already examined the case as the new Commandant; that substantial new evidence was unjustly disregarded by the Academy Advisory Board, including that Major Wilson changed Plaintiff's homework before presenting it as evidence to the Honor Board and that Plaintiff's roommate witnessed him doing one of the subject assignments alone; that the Academy Advisory Board received additional testimony from the computer science instructor but did not allow Plaintiff to be heard or provide rebuttal; and that, contrary to prior Academy precedent and practice, Plaintiff's alleged academic honor violations received the harshest sanction possible, because Plaintiff's commander's formal AOC recommendation for retention with probation was unjustly disregarded due to pressure to impose tougher disciplinary standards in light of the 2003 sexual assault scandals.

80. On October 17, 2005, Plaintiff was advised by letter that the AFBCMR had denied his application; a copy of the AFBCMR's decision was enclosed.

81. In its decision the AFBCMR stated that Plaintiff had presented insufficient relevant evidence to demonstrate the existence of error or injustice. However, the AFBCMR decision merely adopts the advisory opinions or evaluations of the Air Force, without any substantive discussion or analysis.

82. In adopting the advisory opinions or evaluations of the Air Force, the AFBCMR erroneously concluded that Plaintiff developed sero-negative rheumatoid arthritis after completing

15

two years at the Academy, contrary to clear evidence in the record.

## STATUTORY AND REGULATORY FRAMEWORK

83. Applicable regulations that govern cadets, conduct at the Academy, the Academy Honor Code, disenrollment from the Academy, and discharge from the Air Force include but are not limited to: AFI 36-2020 (Disenrollment of U.S. Air Force Academy Cadets); AFI 48-123 (Medical Examinations and Standards); Department of Defense (DoD) Directive 1332.23 (Service Academy Disenrollment); USAFAI 48-104; and the Air Force Cadet Wing Honor Code Reference Handbook.

84. 10 U.S.C. § 1552 provides for the correction of errors in the record of a member of the military. Upon timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

10 U.S.C. § 1552(a)(1).

85. The AFBCMR is established by the Secretary of the Air Force and consists of civilians of the executive part of the Department of the Air Force who are appointed by the Secretary of the Air Force; three members constitute a quorum. 32 C.F.R. § 865.1. The AFBCMR will review all matters that are properly before it to determine the existence of error or injustice. 32 C.F.R. § 865.2.

86. The AFBCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. Untied States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

87. The AFBCMR has significant power to grant relief, and may, for example order reinstatement and back pay. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (Board is

16

empowered under 10 U.S.C. § 1552 to order retroactive pay and promotion); 10 U.S.C. § 1552 (may

pay claims for lost pay, allowances, etc., as the result of a record correction).

## LEGAL CLAIMS

### Count 1

### The AFBCMR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law.

88. The allegations of the preceding paragraphs are incorporated by reference as if fully set

forth herein.

89. The AFBCMR, acting for the defendant, by refusing to provide full and complete relief

to Plaintiff in its decision dated October 17, 2005, violated Plaintiff's right pursuant to 10 U.S.C.

§ 1552 to have his military records corrected to adequately and fully correct an error or remove an

injustice. Specifically, by failing to remove the two findings in 2003 that he violated the Honor

Code, failing to direct the elimination of the debt for the cost of his Academy education, and failing

to provide the other records corrections requested by Plaintiff, the decision of the AFBCMR

unlawfully withheld relief to which Plaintiff was legally entitled. The AFBCMR decision was

arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise

contrary to law, all within the authority of this reviewing Court to remedy under the APA, 5 U.S.C.

§ 706.

### Count II

### The AFBCMR's action was contrary to applicable regulations and violated Plaintiff's constitutional right to due process of law.

90. The allegations of the preceding paragraphs are incorporated by reference as if fully set

forth herein.

91. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations, including AFI 36-2020, AFI 48-123 and USAFAI 48-104, were violated by the failure of the Air Force to conduct a follow-up MEB after the initial MEB that was convened on December 14, 2001 found that Plaintiff was not medically qualified for military service including for worldwide duty, for commissioning, for flying, or even for a medical waiver.

92. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations, including AFI 36-2020, AFI 48-123 and USAFAI 48-104, were violated by the failure of the Air Force to issue Plaintiff a medical discharge prior to the fall of 2002.

93. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations, including AFI 36-2020, AFI 48-123 and USAFAI 48-104, were violated by the failure of the Air Force to conclude that Plaintiff's disqualifying medical condition commenced prior to the beginning of his third year at the Academy; thus his medical condition should have been evaluated according to standards for induction not retention, and his obligation to repay his educational expenses should have been determined based on his having developed rheumatoid arthritis prior to, rather than after, the beginning of his third year as a Cadet.

94. The AFBCMR's decision in this matter was contrary to applicable regulations, because Air Force directives and regulations were violated by the Air Force not allowing Plaintiff separate honor board hearings to defend himself against three unrelated honor accusations that did not stem from the same incident but that involved highly complex and technical computer science issues.

95. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations, including the Air Force Cadet Wing Honor Code Reference Handbook and procedures governing an Honor Board hearing, were violated by the failure of the Air

18

Force to require that Plaintiff's Comp Sci 467 instructor Major Wilson, who was the initiator and only witness against Plaintiff, appear and testify in person at Plaintiff's Honor Board.

96. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations, including the Air Force Cadet Wing Honor Code Reference Handbook, were violated by the failure of the Air Force to provide adequate legal assistance to Plaintiff, including sufficient access to and information regarding legal counsel and an expert consultant, prior to and during the Honor Board proceedings.

97. The AFBCMR's decision in this matter was contrary to applicable regulations and Plaintiff's right to due process because Air Force directives and regulations were violated by the failure of the Air Force to allow Plaintiff to raise an affirmative mistake of fact defense and to instruct the Honor Board regarding such defense.

98. The AFBCMR's decision in this matter was contrary to applicable regulations because Air Force directives and regulations were violated by the fact that the Academy Commandant held both the position of Commandant and the position of Acting Academy Superintendent during Plaintiff's punishment determination; despite having already reviewed Plaintiff's case and punishment determination, he proceeded to serve as the chairman of the Academy Board that reviewed Plaintiff's case and upheld punishment even though the new Superintendent was arriving the next day at the Academy and would have conducted an independent review of Plaintiff's case.

99. The AFBCMR failed to perform its duties under 10 U.S.C. § 1552, AFI 36-2020, AFI 48-123, DoD Directive 1332.23, USAFAI 48-104, and the Air Force Cadet Wing Honor Code Reference Handbook.

100. Violations of Air Force regulations constitute a violation of the due process provisions

19

of the Fifth Amendment. See, e.g., Antonuk v. United States, 445 F.2d 592, 595 (6th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

101. The military's failure to adhere to its own regulations violated Plaintiff's right to due process of law under 10 U.S.C. § 1552, AFI 36-2020, AFI 48-123, DoD Directive 1332.23, USAFAI 48-104, the Air Force Cadet Wing Honor Code Reference Handbook, and the Fifth Amendment.

## PRAYER FOR RELIEF

102. WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(A)     Set aside the decision of the AFBCMR;

(B)     Compel the defendant to:

    (1)     Remove from Plaintiff's official military personnel file all records relating to the two findings in 2003 that he violated the Academy Cadet Honor Code, and all documents referring to Plaintiff's unlawful disenrollment and discharge;

    (2)     Order that Plaintiff's record be corrected to reflect that he was granted a diploma from the Academy;

    (3)     Order that Plaintiff's record be corrected to reflect that the debt incurred for the cost of Plaintiff's education at the Academy is eliminated either by waiving that debt or by granting him a medical discharge for the rheumatoid arthritis that began during his second year at the Academy.

(C)     Award Plaintiff monetary damages for back pay no greater than $10,000 (Plaintiff specifically waives the recover of any monetary damages that he would be entitled to in excess of $10,000);

20

(D)     Award Plaintiff attorneys' fees and costs expended in pursuit of this claim, pursuant to the

Equal Access to Justice Act, 28 U.S.C. § 2412; and

(E)     Grant any other relief that the Court deems just and proper.

Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

Attorney for Plaintiff

21

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

John Paul Charlton

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Law Offices of David P. Sheldon, PLLC

512 8th St. SE, Washington, DC 20003, 202-546-9575

**DEFENDANTS**

Michael W. Wynne, Secretary of the Air Force

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☒ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

## ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ K. *Labor/ERISA (non-employment)*<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ L. *Other Civil Rights (non-employment)*<br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| □ 1 Original Proceeding | □ 2 Removed from State Court | □ 3 Remanded from Appellate Court | □ 4 Reinstated or Reopened | □ 5 Transferred from another district (specify) | □ Multi district Litigation | □ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C.  1331, Review of decision by the Air Force Board for Correction of Military Records

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES  ✗ □ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction) □ YES □ NO   If yes, please complete related case form.

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.